O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VICKEN O. BERJIKIAN and ENNA
BERJIKIAN,

                  Plaintiffs,

    v.

FRANCHISE TAX BOARD;
DEPARTMENT OF MOTOR
VEHICLES; BOARD OF PHARMACY,

               Defendants.
_____

Case No. CV 13-06301 DDP (JCGx)

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Presently before the Court are the parties' cross-motions for summary judgment.  Having considered the submissions of the parties, the court grants Plaintiffs' Motion, denies Defendants' Motion, and adopts the following Order.

**I. Background**

    California Revenue and Taxation Code Section 19195 directs the state's Franchise Tax Board ("FTB") to "make available as a matter of public record at least twice each calendar year a list of the 500 largest tax delinquencies in excess of one hundred thousand dollars." Cal. Rev. & Tax. Code § 19195. The FTB's "top 500 list"

includes the taxpayer's name and address, the amount of tax delinquency, the taxpayer's occupation, and the type, status, and license number of any occupational or professional license held by the person or persons liable for payment of the tax. Id.

Plaintiffs, husband and wife, are on the top 500 list. (Plaintiffs' Statement of Undisputed Facts ("PSUF") ¶¶ 4-5.) As of July 30, 2013, Plaintiffs owed the FTB $454,991.48. (Id. ¶ 6.) $388,653.04 of this amount involves tax years 1990-1994. (Id. ¶¶ 21, 25.) The taxes Plaintiffs owed the FTB for years other than 1990-1994 would not make Plaintiffs eligible for the "top 500 list" because the delinquencies were not in excess of $100,000. (Id. ¶ 27.)

A notice of proposed tax assessments for tax years 1990-1992 was sent to Plaintiffs on December 31, 1997. (Id. ¶ 18.) A notice of proposed assessments for tax years 1993-1994 was sent to Plaintiffs on July 6, 1998. (Id. ¶ 19.) Plaintiffs had sixty days from the date the notices were mailed to request a hearing regarding the tax assessments. (Id. ¶ 20.; Exhibit D.) After the sixty days had passed, Plaintiffs' right to a hearing expired. (Id. ¶ 20, 22.) Thus, Plaintiffs' right to request any hearing with regard to tax assessments for tax years 1990-1994 expired sixty-one days after July 6, 1998. (Id. ¶ 22.)

Plaintiff Enna Berjikian has been licensed as a pharmacist in California since 1981 and as an attorney since 2006. (Id. ¶¶ 1,3.) Plaintiff Vicken Berjikian has been licensed as an attorney in California since 1983. (Id. ¶ 2.)  On July 1, 2012, California Business and Professions Code Section 494.5 went into effect. (Id. ¶ 39.) Section 494.5 provides that California state governmental

1 licensing entities shall refuse to issue, reactivate, reinstate, or

2 renew a license and shall suspend a license if a licensee's name is

3 included on a certified list. Cal. Bus. & Prof. Code § 494.5. The

4 term "certified list" includes the FTB's top 500 list. Cal. Bus. &

5 Prof. Code § 494.5(b)(1). "License" includes a certificate,

6 registration, or any other authorization to engage in a profession

7 or occupation issued by a state governmental licensing entity, as

8 well as driver's licenses.  Cal. Bus. & Prof. Code § 494.5(b)(2).

9 "State governmental licensing entity" includes the DMV, the State

10 Bar of California, and "any other state agency, board, or

11 commission that issues a license, certificate, or registration

12 authorizing an individual to engage in a profession or occupation,

13 including any certificate, business or occupational license, or

14 permit or license issued by the Department of Motor Vehicles . . .

15 ." Cal. Bus. & Prof. Code § 494.5(b)(4).

16     On April 18, 2013, the DMV received notice from the FTB that

17 Plaintiffs were on the certified list of top 500 tax delinquencies.

18 (PSUF ¶ 28.) On May 23, 2013, the DMV issued notices of intent to

19 suspend both Plaintiffs' driver's licenses on September 30, 2013,

20 pursuant to Section 494.5. (Id. ¶ 29.) On May 29, 2013, the Board

21 of Pharmacy sent a notice of intent to suspend Enna Berjikian's

22 pharmacy license with an effective suspension date of August 30,

23 2013. (Id. ¶ 30.) Plaintiffs' driver's licenses and Enna

24 Berjikian's pharmacy license have been suspended pursuant to

25 Section 494.5. (Id. ¶¶ 31-32.)

26     At the time Plaintiffs were notified they were going to lose

27 their driver's licenses, their right to a hearing with regard to

28 tax years 1990-1994 had expired almost fifteen years earlier. (Id.

¶ 33.) Their right to request a hearing with regard to tax year 2004 had expired almost two years earlier. (Id. ¶ 34.)

Under Section 494.5, if a licensee wishes to challenge the submission of his or her name on a certified list, the licensee "shall make a timely written request for release to the FTB."  Cal. Bus. & Prof. § 494.5(h). The FTB "shall immediately send a release to the appropriate state governmental licensing entity and the applicant or licensee," if (1) the licensee has complied with the tax obligation; (2) the licensee has submitted a request for release not later than 45 days after the licensee's receipt of a preliminary notice "but the [FTB] . . . will be unable to complete the release review and send notice of its findings to the licensee and state governmental licensing entity within 45 days . . .;" or (3) the licensee is unable to pay the outstanding tax obligation due to a "current financial hardship" as determined by the FTB. Id.

Plaintiffs requested a waiver due to financial hardship under the third option, but the FTB denied their request. (PSUF ¶¶ 37-38.) The FTB did not provide any hearing opportunity as to this issue. (Id.) Plaintiffs' right to a hearing with regard to tax year 2004 had expired roughly one year earlier, and Plaintiffs' right to a hearing with regard to tax years 1990-1994 had expired about fourteen years earlier. (Id. ¶ 39.) However, financial hardship was not an issue Plaintiffs could have brought up at a tax assessment hearing. (Id. ¶ 41.) Additionally, neither the DMV nor the Board of Pharmacy provided Plaintiffs with any hearing with regard to the loss of their licenses. (Id. ¶¶ 35-36.)

4

1   Plaintiffs then brought this action against the FTB, DMV, and
2   Board of Pharmacy (collectively, "Defendants"). Plaintiffs allege
3   Defendants violated their due process rights under the Fourteenth
4   Amendment by not providing a hearing before depriving Plaintiffs of
5   their driver's licenses and pharmacy license pursuant to California
6   Business and Professions Code Section 494.5 ("Section 494.5").
7   (Plaintiffs' Motion at 5:3-6.)  The parties agree that there are no
8   disputed issues of material fact.  Plaintiffs request that a
9   judgment be entered in their favor, that a permanent injunction be
10  issued ordering the DMV to reinstate Enna Berjikian's driver's
11  license and the Board of Pharmacy to reinstate Enna Berjikian's
12  pharmacy license, and for recovery of Plaintiffs' costs and
13  attorney's fees. (Plaintiffs' Motion at 18:6-12.)  The only
14  question that remains is whether Plaintiffs' due process rights
15  have been violated.

16  **II. Legal Standard**

17   Summary judgment is appropriate where the pleadings,
18  depositions, answers to interrogatories, and admissions on file,
19  together with the affidavits, if any, show "that there is no
20  genuine dispute as to any material fact and the movant is entitled
21  to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party
22  seeking summary judgment bears the initial burden of informing the
23  court of the basis for its motion and of identifying those portions
24  of the pleadings and discovery responses that demonstrate the
25  absence of a genuine issue of material fact. See Celotex Corp. v.
26  Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from
27  the evidence must be drawn in favor of the nonmoving party. See
28  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the

1   moving party does not bear the burden of proof at trial, it is

2   entitled to summary judgment if it can demonstrate that "there is

3   an absence of evidence to support the nonmoving party's case."

4   Celotex, 477 U.S. at 323.

5       Once the moving party meets its burden, the burden shifts to

6   the nonmoving party opposing the motion, who must "set forth

7   specific facts showing that there is a genuine issue for trial."

8   Anderson, 477 U.S. at 256. Summary judgment is warranted if a party

9   "fails to make a showing sufficient to establish the existence of

10  an element essential to that party's case, and on which that party

11  will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

12  A genuine issue exists if "the evidence is such that a reasonable

13  jury could return a verdict for the nonmoving party," and material

14  facts are those "that might affect the outcome of the suit under

15  the governing law." Anderson, 477 U.S. at 248. There is no genuine

16  issue of fact "[w]here the record taken as a whole could not lead a

17  rational trier of fact to find for the nonmoving party." Matsushita

18  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

19  It is not the court's task "to scour the record in search of a

20  genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278

21  (9th Cir.1996). Counsel has an obligation to lay out their support

22  clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031

23  (9th Cir.2001). The court "need not examine the entire file for

24  evidence establishing a genuine issue of fact, where the evidence

25  is not set forth in the opposition papers with adequate references

26  so that it could conveniently be found." Id.

27  ///

28  ///

6

**III. Discussion**

Plaintiffs allege that Section 494.5 violated their right to procedural due process by failing to provide for any hearing rights before depriving Plaintiffs of their constitutionally protected property interests in their driver's licenses and Enna Berjikian's pharmacy license. Defendants argue that Section 494.5 does not violate due process because the right to drive is not a fundamental vested right and because no additional hearing on Plaintiffs' license suspensions was constitutionally required.

"The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). "Precisely what procedures the Due Process Clause requires in any given case is a function of context." Brewster v. Board of Educ. of the Lynwood Unified School Dist., 149 F.3d 971, 983 (9th Cir. 1998). Thus, "a procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case." Bell v. Burson, 402 U.S. 535, 540 (1971).

In order to prevail on their procedural due process claim, Plaintiffs must show: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).

A.   Deprivation of Protected Property Interest

To establish a claim for the denial of procedural due process, plaintiffs must first establish that they had a property or liberty interest protected by the Due Process Clause. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Here, Plaintiffs assert that

7

their driver's licenses and Enna Berjikian's pharmacy license are property interests of the type afforded Fourteenth Amendment protection.

The Supreme Court has "made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571-72 (1972). "The Supreme Court has held that property interests derive not from the Constitution but from 'existing rules or understandings that stem from an independent sources such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Gallo v. U.S. Dist. Court for Dist. of Ariz., 349 F.3d 1169, 1178 (9th Cir. 2003) (quoting Roth, 408 U.S. at 577). "[R]elevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'" Bell, 402 U.S. at 539. However, in order to have a constitutionally protected property interest in a benefit, a plaintiff "must have more than a unilateral expectation of it[;]" instead, the plaintiff "must have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

1.   Plaintiffs' Driver's Licenses

Defendants contend that there is no substantive constitutional right to drive a vehicle or to drive a car or to work at a particular profession. (Defendants' Opposition at 11:18-19.) Although Defendants may be correct that there is no fundamental right to drive a vehicle (see, e.g., Miller v. Reed, 176 F.3d 1202, 1205-06 (9th Cir. 1999)), they mischaracterize Plaintiffs' argument.  Plaintiffs argue that their right to an existing

1  driver's license is a protected property interest under the
2  Fourteenth Amendment.

3      Courts have drawn a distinction between existing and applied
4  for driver's licenses.  "It is clear that the Due Process Clause
5  applies to the deprivation of a driver's license by the State . . .
6  ." Dixon v. Love, 431 U.S. 105, 112 (1977). Once individuals have
7  obtained driver's licenses, "the licenses are not to be taken away
8  without . . . procedural due process." See Bell, 402 U.S. at 539;
9  see also Jones v. City of Modesto, 408 F. Supp. 2d 935, 951 (E.D.
10  Cal. 2005)(citing Greenwood v. Fed. Aviation Admin., 28 F.3d 971,
11  975 (9th Cir. 1994) ("The Ninth Circuit specifically recognized
12  that an existing license, in contrast to an applied for license,
13  constitutes a legitimate entitlement of which one cannot be
14  deprived without due process.").

15      In Bell, the Court held that the state could not revoke the
16  driver's license of a minister who had been involved in a car
17  accident after conducting administrative proceedings that failed to
18  inquire into the minister's fault in the accident. Bell, 402 U.S.
19  at 542. The Court reasoned that "[o]nce [driver's] licenses are
20  issued . . . their continued possession may become essential in the
21  pursuit of a livelihood." Id. at 535, 539. Because "[s]uspension of
22  issued licenses thus involves state action that adjudicates
23  important interests of the licensees . . . . [i]n such cases the
24  licenses are not to be taken away without that procedural due
25  process required by the Fourteenth Amendment." Id.

26      Here, the Due Process Clause similarly applies to California's
27  attempt to deprive Plaintiffs of their driver's licenses. The
28  licenses suspended by the FTB were existing licenses that

Plaintiffs had previously obtained. Plaintiffs were not seeking renewal of their licenses or applying for new licenses.[1] Plaintiffs, thus, had a legitimate property interest in their driver's licenses, of which they could not be deprived without adequate due process.

### 2. Plaintiff Enna Berjikian's Pharmacy License

Plaintiff Enna Berjikian further alleges that her pharmacy license is a property interest of the type afforded protection by the Due Process Clause. Again, the Court agrees. Similar to driver's licenses, "[c]ourts have long recognized that licenses which enable one to pursue a profession or earn a livelihood are protected property interests for purposes of a Fourteenth Amendment analysis." Jones v. City of Modesto, 408 F. Supp. 2d 935, 950 (E.D. Cal. 2005). See, e.g., Barry v. Barchi, 443 U.S. 55, 99 (1979) (holding that a horse trainer had a property interest in his horse training license under state law sufficient to invoke due process protections); Jones, 408 F. Supp. at 951 (holding that a massage business owner had a property interest in his massage therapist license and massage establishment license sufficient to invoke due process protections).

Here, like the professional licenses at issue in Barry and Jones, Plaintiff's pharmacy license enabled her to pursue her profession as a pharmacist. Without this license, she could not pursue her livelihood. Her pharmacy license was, therefore, a

---

[1] The court notes that Franceschi v. Chiang, No. 14-cv-1960-CAS, which Defendants cite, but do not discuss, in their brief reply (Dkt. 53 at 5), appears to concern a license renewal, not a revocation.

constitutionally protected property sufficient to invoke due process protections.

Because Plaintiffs' driver's licenses and Plaintiff Enna Berjikian's pharmacy license are protected property interests under the Fourteenth Amendment, and Defendants deprived Plaintiffs of these interests when they revoked these licenses, the first element of the procedural due process inquiry is met.

B. Denial of Adequate Process

Having determined that Plaintiffs were deprived of a constitutionally-protected property interest, the court now turns to the second element of the procedural due process inquiry: whether Plaintiffs were denied adequate procedural protections.

The Due Process Clause "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950); see also Chalkboard, Inc. v. Brandt, 902 F.2d 1375, 1380 (9th Cir. 1989). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The opportunity for hearing must occur "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

Plaintiffs assert that they have not had sufficient notice and opportunity to be heard. The court agrees. The essential problem in Plaintiffs' case is that at the time Plaintiffs had the opportunity for a hearing regarding their tax assessments, they did not have notice that they could lose their licenses. Indeed, Plaintiffs'

first such notice occurred over a decade after any opportunity for a hearing expired. Thus, although Plaintiffs had notice of the deprivation at one point in time and, arguably, the opportunity for a hearing at another point in time, notice and opportunity for a hearing never existed contemporaneously.[2]

Without contemporaneousness of notice and opportunity to be heard, Plaintiffs did not have the opportunity to be heard "at a meaningful time and in a meaningful manner." See Mathews, 424 U.S. at 333. Plaintiffs' opportunity for a hearing did not occur at a "meaningful time" because Plaintiffs did not know they could lose their licenses. Had Plaintiffs known they might suffer this broader consequence, their response to the notices of tax delinquencies may very well have been different.  Plaintiffs suggest that, given the "bigger stakes," they may have protested the tax assessments, hired a lawyer, or had Enna Berjikian argue that she was an innocent taxpayer who was not involved in her husband's business.  Once Plaintiffs' licenses were suspended, their only remedy was to submit a written claim for "financial hardship," with no opportunity to be heard.

"Due process does not, of course, require that the defendant in every civil case actually have a hearing on the merits." Boddie v. Connecticut, 401 U.S. 371, 378 (1971).  Defendants argue that Plaintiffs' initial opportunity to be heard on the tax delinquency issue created a sufficient hearing opportunity on the license deprivation issue.  In support of their contention, Defendants cite Crum v. Vincent, 493 F.3d 988 (8th Cir. 2007).  In Crum, the state

---

[2] The retroactivity implications of this situation are addressed further below.

1   suspended a physician's license because he had not filed state
2   income tax returns for the prior three years and had a tax
3   deficiency. <u>Crum</u>, 493 F.3d at 992.  The court held that the
4   hearing right granted to the plaintiff with regard to his tax
5   delinquency served as an adequate hearing with regard to the
6   suspension of his medical license. <u>Crum</u>, 494 at 993; <u>See also</u>
7   <u>Pickell v. Sands</u>, No. 2:12-cv-0373 TLN DAD, 2014 WL 546049 (E.D.
8   Cal. Feb. 7, 2014) (applying <u>Crum</u>).

9       <u>Crum</u>, however, is distinguishable.  The <u>Crum</u> court determined
10  that "a license revocation hearing could add nothing to a tax
11  deficiency hearing in this case, because the outcome of the tax
12  hearing would necessarily determine the outcome of the revocation
13  hearing." <u>Crum</u>, 493 F.3d at 993.  Critically, however, "Crum had
14  notice that he could lose his license if he failed to file his
15  returns, and he was thus apprised of the matters that would be at
16  stake in a tax deficiency hearing." <u>Id.</u>  Unlike Plaintiffs here,
17  the <u>Crum</u> plaintiff was mailed tax deficiency notices <u>before</u> his
18  medical license was revoked on the basis of those deficiencies.
19  <u>Id.</u> at 992; <u>See also</u> <u>Pickell</u>, 2014 WL 546049 at *3,6 (denying due
20  process claim where pro se plaintiff had notice that tax
21  deficiencies would result in suspension of contractor's license,
22  protested tax assessments, and appealed denial of protest).

23      Here, at the time Plaintiffs could have availed themselves of
24  their hearing rights before the FTB to challenge their tax
25  deficiencies, that hearing could not have also allowed Plaintiffs
26  to challenge the revocations of their licenses because no such
27  revocations were then possible.  The opportunity, over a decade
28  later, to file a written claim of financial hardship cannot be

1    considered a "meaningful manner" in which to dispute the

2    deprivation of one's driver's and professional license at a

3    "meaningful time." Compare Mathews, 424 U.S. 319, 338-339, 348

4    (describing post-termination hearing procedures).

5         C.   Retroactivity

6         Plaintiffs also argue that the imposition of new, license-

7    related penalties for past tax delinquencies is retroactive.  The

8    court agrees.  "[T]he presumption against retroactive legislation

9    is deeply rooted in our jurisprudence . . . .  Elementary

10   considerations of fairness dictate that individuals should have an

11   opportunity to know what the law is and to conform their conduct

12   accordingly[.]" Landgraf v. USI Film Prods., 5811 U.S. 244, 265

13   (1994).  The central issue in a retroactivity analysis is "whether

14   the new provision attaches new legal consequences to events

15   completed before its enactment." Id. at 270.  That question

16   requires an inquiry into "the nature and extent of the change in

17   the law and the degree of connection between the operation of the

18   new rule and a relevant past event." Id.

19        Here, the connection between driver's licenses and unpaid

20   income taxes is tenuous. Compare Pickell, 2014 WL 546049 at *6

21   (finding suspension of contractor's license related to tax

22   delinquency by helping insure that a licensed contractor could

23   satisfy potential liabilities and was of good moral character).

24   Indeed, Defendants identify no such connection.  Thus, this case is

25   distinguishable from Bhalerao v. Illinois Dept. of Fin. and Prof'l

26   Regulations, 834 F.Supp.2d 775 (N.D. Ill. 2011).  In Bhalerao, the

27   plaintiff, a physician, was convicted of misdemeanor battery on a

28   patient in the year 2000. Bhalerao, 834 F.Supp.2d at 780.  The

plaintiff retained his license and continued to practice medicine through 2011.  Id.  In 2011, a newly enacted Illinois statute required the revocation, without a hearing, of any license issued to any health care worker who had been convicted of a criminal battery against any patient.  Id.  In denying the plaintiff's due process-based motion for a preliminary injunction, the Bhalerao court concluded that the revocation statute did not attach any new legal consequences to past acts, but rather operated prospectively. Id. at 783.  The court reasoned that the statute only created "present and future effects on present and future conduct" because it did not impinge on the plaintiff's right "in the preceding years to practice - for example, by divesting him of any profits . . . or deeming unauthorized his practice of medicne during the time between his conviction and the revocation of his sentence."[3]  Id. (internal quotation and citation omitted).

     Respectfully, this court would not necessarily agree that the Illinois revocation statute's lack of retrospective effect equates to an absence of "new" legal consequences.  But in any event, the degree of connection between the operation of the new Illinois rule and the plaintiff's prior conduct was far more significant in Bhalerao than is the case here.  The criminal battery on a patient at issue there was unquestionably closely bound up with state oversight and licensing of medical professionals.  Here, in contrast, Defendants have made no attempt to explain the relevance of Plaintiffs' tax delinquencies to their driver's licenses or

---

     [3] Although the parties here both frame the relevant analysis in terms of procedural due process, the Bhalerao court addressed retroactivity in the context of a substantive due process inquiry. Bhalerao, 834 F.Supp.2d at 782-86.

pharmacy license.[4]  Because Section 494.5 imposed new, unconnected license-related consequences upon Plaintiffs, its application to them was impermissibly retroactive.

**IV. Conclusion**

As applied to Plaintiffs, Section 494.5 did not afford Plaintiffs a meaningful opportunity to be heard at a meaningful time regarding the suspension of their licenses, and operated retroactively to penalize them for conduct long past.  For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' motion is DENIED.  To the extent Plaintiffs' licenses were revoked on the basis of long-since finalized tax delinquencies, that basis was invalid.  Defendants are therefore enjoined from continuing to withhold Plaintiffs' licenses on such grounds.

IT IS SO ORDERED.

Dated: March 12, 2015

DEAN D. PREGERSON

United States District Judge

---

[4] For the same reasons, the court is not persuaded by Defendants' analogy to criminal cases such as <u>Gryger v. Burke</u>, 334 U.S. 728, 232 (1948), in which the Court found no ex post facto clause violation and distinguished a "stiffened penalty" from an additional penalty for an earlier crime.  Defendants do not explain how the deprivation of a property interest wholly separate from the underlying tax violation is but a "stiffened penalty."  (Dkt. 50 at 17.)